ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400
Barry J. Glickman, Esq.
Attorneys for Defendant
Bank of America, N.A. s/h/a
Bank of America National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AUGIE HASHO & ASSOCIATES, INC.,

Plaintiff,

- against -

BANK OF AMERICA NATIONAL ASSOCIATION,

Defendant.

Case No.: 10-CV-5204 (PAC)

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT
AND/OR FOR SUMMARY JUDGMENT**

ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 223-0400

Defendant Bank of America, N.A. s/h/a Bank of America National Association ("BANA") submits this memorandum of law in reply to plaintiff's opposition and in further support of its motion for an order pursuant to Rules 12(b)(6), 12(d) and/or 56 of the Federal Rules of Civil Procedure dismissing plaintiff's complaint and/or for summary judgment in favor of BANA.

## PRELIMINARY STATEMENT

In its original brief BANA posited that when the facts are on your side, bang the facts; when the law is on your side, bang the law; and when neither the law nor the facts are on your side, bang the table. Based on nothing more than the complaint, BANA prognosticated that plaintiff was banging the table. Indeed, plaintiff's opposition to the motion confirms BANA's suspicion. Hidden behind plaintiff's folksy vernacular is the undeniable reality that (i) the controlling law as enunciated by BANA is uncontrovertible and (ii) the "facts" as plaintiff would have this Court believe them to be are no more than unsubstantiated pronouncements of hope.

In a transparent effort to manufacture a triable issue of material fact, plaintiff paints a picture of a world that it would, in hindsight, like to have been a reality two decades ago. Specifically, it lauds itself for having had the wisdom and foresight to enter into the seemingly binding, written Commission Agreement with the Landlord when there was really no need to do so. If plaintiff is to be believed, NatWest was really its obligor. Remarkably, however, plaintiff fails to address how it is that one who could engineer such a brilliant maneuver would inexplicably fail to reduce to writing an

agreement that similarly obligated NatWest. BANA submits this is not simply an oversight on plaintiff's part. Rather, plaintiff's recitation of what he would characterize as facts is simply an elegantly pleaded example of revisionist history.

But, this is not Alice in Wonderland where what is up is down and what is down is up. Here, we have the Commission Agreement, an enforceable contract, between plaintiff and the Landlord and no demonstrable agreement with BANA or its predecessors. As a matter of law, as stated in BANA's main brief, "[a]ny implication of employment of [broker] as [seller's] agent in this transaction is explicitly negated by [broker's] own signed agreement with the [buyer]." Julien J. Studley, Inc. v. New York News, Inc., 70 N.Y.2d 628, 629, 518 N.Y.S.2d 780 (1987).

What is, perhaps, most dispiriting about plaintiff's opposition is the cavalier approach it takes in advancing supposition and abject conclusory statements as incontrovertible facts. Specifically, confronted with the reality that NatWest is not a signatory to the Commission Agreement and that it was not a signatory to the First Lease, plaintiff resorts to proffering explanations for the inclusion of certain provisions in the First Lease and why the Commission Agreement ought to be utilized as ammunition against BANA. It is beyond cavil that such allegations are no more than mere expressions of hope that this Court ought not to consider in assessing the merits of BANA's motion.

In short, to use the vernacular of which plaintiff and its attorney are so fond, plaintiff cannot have its cake and eat it. It contracted with the Landlord for the payment of brokerage commissions. On the other hand, there is nothing that evinces any

intent on the part of BANA or any of its predecessors to assume any obligation to pay a brokerage commission to plaintiff decades ago, let alone today. It is vital for this Court to remember that by its complaint plaintiff sues to recover "its standard commission" based on the existence of "[b]oth an implied and an express contract." Conspicuous by its absence in the record is what is meant by plaintiff by this amorphous reference to "standard commission." Certainly, if plaintiff does not know, there is no possible construction of the documents that comprise the record that would make it clear to BANA or to this Court.

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO REFUTE BANA'S PRIMA FACIE SHOWING OF ENTITLEMENT TO SUMMARY JUDGMENT

On a motion for summary judgment, the party opposing the motion must produce all the evidentiary proof at his disposal, in admissible form to defeat the motion. See Morris v. Buffalo Chips Bootery, Inc., 160 F.Supp.2d 718 (S.D.N.Y. 2001). In Safe-Strap Co., Inc. v. Koala Corp., 270 F.Supp.2d 407, 56 Fed.R.Serv.3d 282 (S.D.N.Y. 2003), Judge Whitman Knapp observed that "a court which finds that a party failed to offer sufficient evidence to resist a motion for summary judgment must dismiss that party's claims." 270 F.Supp.2d at 419. Consistent with this, speculative allegations alone are not sufficient to defeat a motion for summary judgment. Momentum Luggage & Leisure Bags

v. Jansport, Inc., No. 00 Civ. 7909 (DLC), 2001 WL 830667 (S.D.N.Y. July 23, 2001). See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

Here, plaintiff relies on precisely the type of speculation and conjecture that courts abhor. Most blatantly, plaintiff peppers its opposition with rhetorical questions ("...who better to look to for his bargained-for compensation than his own client"; "just because [plaintiff] agreed to accept the written undertaking of the landlord, he suddenly has switched sides") and outright conclusions ("[a]n agreement by a landlord to compensate a tenant's broker, which is an extremely common arrangement in the commercial real estate industry in New York, is not the same thing as an agreement by the landlord to employ that broker"; "[n]or did execution of that brokerage agreement make him an agent or employee of the landlord"; "it is just an ordinary agreement to pay the commission on the tenant's behalf"; "NatWest knew it was their obligation to pay; Hasho was the agent for the bank;") While the opposition is replete with these bold declarations that are included to bolster plaintiff's case, mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient to defeat summary judgment, Alvord & Swift v. Muller Construction Co., 46 N.Y.2d 276, 413 N.Y.S.2d 309 (1978).

As if to justify an entitlement to *a commission*, as opposed to *a commission from BANA*, plaintiff makes much of the "hundreds of hours" he spent for which he should be remunerated. First, this is irrelevant to the determination of this motion. Next, as plaintiff admits, it was handsomely compensated *by the Landlord* for services rendered in connection with the First Lease, lest anyone ought to shed tears for plaintiff. Finally, and

most important, the issue here is simply whether, if a commission is due, ought BANA be responsible for its payment. On this, the ultimate issue, the law is clear and plaintiff's efforts to distinguish the controlling authority as inapposite must be recognized as the desperate measure that it is.

Central to this case is the existence of the Commission Agreement. In Julien J. Studley, Inc. v. New York News, Inc., 70 N.Y.2d 628, 629, 518 N.Y.S.2d 780 (1987) a broker sued to recover a real estate brokerage commission from a seller in spite of the existence of a written agreement in which it had entered with a buyer. If this sounds familiar, it should. That is precisely what we are confronted with here. However, recognizing that Studley spells doom for its claim against BANA, plaintiff feverishly endeavors to distinguish it by developing purported factual discrepancy between the two cases. Here, we are told that "Hasho was the agent for the bank." Indeed, this is the consummate example of "trust me." Moreover, in doing so it asks us to disregard the proverbial eight hundred pound gorilla, the Commission Agreement.

Next, plaintiff urges the Court to, instead, follow the lead of Joseph P. Day Realty Corp. v. Chera, 308 A.D.2d 148, 762 N.Y.S.2d 373 (1st Dept. 2003). In Day Realty there does not appear to have been anything similar to the Commission Agreement here. Thus, in exercising its equitable powers if only to prevent the broker from being deprived of an opportunity to pursue its claim against either the landlord or the tenant, the state court ascribed a great deal of weight to the inclusion in a lease of an indemnity

agreement given by the landlord to the tenant. What distinguishes Day from this case however is manifest. The court commented that

> since [the landlord's] indemnity obligation was broader than that of the [tenant to the landlord], and expressly *included* a claim for a brokerage commission by this plaintiff, it may reasonably be inferred that the parties intended that [the landlord]], not [the tenant], were obligated to pay plaintiff's commission.

308 A.D.2d at 153. Here, the First Lease contains a diametrically opposite provision by which Nat West indemnifies the Landlord against claims "from anyone *other* than [plaintiff]" (emphasis supplied). Such a critical distinction cannot be overestimated.

Plaintiff looks to other cases in furtherance of its claim that a broker should be entitled to recover commissions earned in connection with a real estate transaction. Some of those cases lend support to an argument that in certain circumstances multiple parties may be jointly liable for such commissions. None of the cases cited by plaintiff stands for the proposition that a broker who has contracted with one party for recovery of his commission may, nevertheless, pursue yet another party to that transaction for that same commission. All of those cases, however on point for the very issues for which they do stand, have no place in plaintiff's brief. As plaintiff must concede, nothing that comes out of this action will interfere with plaintiff's opportunity to pursue the Landlord in an arbitral forum as contemplated by the Commission Agreement.

Finally, to the extent that plaintiff strives to accord any authority to those portions of the Commission Agreement by which it purports to have preserved some right

to proceed against NatWest, BANA reiterates that neither it nor any of its predecessors was asked to or did sign it. Thus, when plaintiff states with certainty that the Commission Agreement provides that "Tenant shall pay the installment of the brokerage commission then due an owing" this is something to which this Court must give short shrift. Of course, it bears mention that plaintiff does not and cannot dispute that the Landlord -- not NatWest -- did, in fact, make the required payments due under the Commission Agreement.

## CONCLUSION

Plaintiff smugly boasts that it sued BANA because, paying homage to a notorious bank robber, "[t]hat's where the money is." Though shedding light on plaintiff's less than honorable motives, this refreshingly candid admission does not establish a predicate for succeeding as against BANA. Plaintiff tries mightily to evade the clear and unequivocal authority espoused by the New York Court of Appeals in Studley, supra, nearly a quarter of a century ago by submitting a brief that is replete with cases in which brokers were left with no recourse other than to proceed against parties to real estate transactions despite the absence of any written commitments to pay their commissions. The fundamental premise in each of these cases, however, is that the transaction party benefitted to the detriment of the broker. Here, plaintiff has what appears to be an iron clad written agreement with the Landlord, the Commission Agreement, and no more than a

gracious thank you note from a NatWest employee. Yet, armed with nothing more than a "more is better" philosophy, plaintiff inexplicably insists upon seeking this Court's imprimatur to pick BANA's pocket. This is a critical distinction that should sound the death knell for plaintiff's claim against BANA.

For all the foregoing reasons, we respectfully request that this Court grant BANA's motion in its entirety, together with such other and further relief as it may deem just and proper.

Dated: New York, New York
November 29, 2010

ZEICHNER ELLMAN & KRAUSE LLP

By: [signature]
Barry J. Glickman, Esq.
Attorneys for Defendant
Bank of America, N.A. s/h/a
Bank of America National Association
575 Lexington Avenue
New York, NY 10022
(212) 223-0400

**CERTIFICATE OF SERVICE**

STATE OF NEW YORK,
COUNTY OF NEW YORK

.

Michael W. Antonivich, under the penalty of perjury declares the following: that I am over the age of eighteen years, and am not a party herein, and reside in Nassau County, New York and that on the 29th day of November, 2010, I served a true copy of the within **DEFENDANT BANK OF AMERICA, N.A.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION** upon the attorneys hereinafter named at the places hereinafter stated by depositing the same, properly enclosed in a post-paid, properly addressed wrapper, into the exclusive care and custody of a depositary maintained and controlled by the U.S. Post Office for first class mail delivery to said attorney at his last known address given below:

Jules D. Zalon, Esq.
Attorney for Plaintiff
20 Curtis Avenue
West Orange, New Jersey 07052

Dated: November 29, 2010

MICHAEL W. ANTONIVICH