UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AUGIE HASHO & ASSOCIATES, INC.,

                Plaintiff,

- against -

BANK OF AMERICA
NATIONAL ASSOCIATION,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 3, 2011

10 Civ. 5204 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

      Augie Hasho & Associates, Inc. ("Hasho") brings this action against Bank of America National Association ("BOA") to recover a brokerage commission claimed to be due on the renewal of a lease executed by one of BOA's predecessor banks in 1994, nearly two decades ago.

      BOA moves to dismiss or for summary judgment on the complaint, under Fed. R. Civ. P. 12(b)(6), 12(d),[1] and 56. When the original lease was executed in 1994, BOA argues, Hasho agreed that the landlord would pay Hasho's commission; neither BOA nor its predecessor was a party to this, or any, commission agreement with Hasho. (BOA Mem. in Supp. 1). BOA argues that this express commitment to pay the brokerage commission establishes that Hasho was the landlord's broker, eliminating any possibility that BOA's predecessor incurred implied legal obligations by reason of its own employment of Hasho.

---

[1] Fed. R. Civ. P. 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Rule 12(d) may be utilized when a Rule 12 motion is more appropriately treated under Rule 56. Hasho has not requested further discovery, and the Court has all the materials that are pertinent to disposition of the motion.

Hasho asserts that BOA's responsibility for the brokerage commission arises independently from the agency relationship between Hasho and BOA's predecessor, and that the agreement with the landlord simply provides an alternative means of receiving a commission, without eliminating BOA's own obligations. For the reasons that follow, the Court GRANTS BOA's motion for summary judgment.

**I. Facts**

In April 1993, "at the specific . . . request of [National Westminster Bank USA ("NatWest"), whose operations BOA subsequently acquired], [Hasho] undertook to find prime rental space in lower Manhattan for a bank branch." (Compl. ¶ 6). On December 6, 1994, NatWest signed a lease with 150 Broadway, N.Y. Associates, L.P. ("Landlord") for premises located at 150 Broadway for an initial term of fifteen years, with two five-year options to renew ("First Lease"). (Id. ¶ 8.) Section 28 of the Rider to the First Lease provided NatWest with the option of making a commission payment, but no obligation to do so: "[Following Landlord's receipt of a demand from Hasho] Tenant may (but shall not be obligated to) pay the brokerage commission then due and owing to [Hasho] and offset the amount of such payment against the rent and additional rent due and payable to [Landlord] hereunder." (Fowler Decl. Ex. A, at 36, § 28 ("Rider to First Lease")).

The Complaint makes no mention of a letter agreement dated December 6, 1994 ("Commission Agreement") between Hasho and Landlord,[2] which provides that Landlord "agree[s] to pay [Hasho] . . . commissions for the initial fifteen (15) year term of the lease."

---

[2] Although the Commission Agreement is not referenced in or attached to the Complaint, the Court considers it for purposes of the motion to dismiss under Fed. R. Civ. P. 12(b)(6) because Hasho knew about (indeed, was party to) it and it is integral to the Complaint's allegations. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); Berman v. Weinstein, 580 F. Supp. 2d 191, 200 (S.D.N.Y. 2008) (holding that consideration of [documents that the pleader either possessed or knew about and that are integral to the complaint] is permissible [on a motion to dismiss] because the pleading party has actual notice of the documents and relied upon them in bringing suit, even if they are not explicitly referenced").

2

(Fowler Decl. Ex. B, at 1). It also requires Landlord to pay additional commissions to Hasho if the tenant (BOA's predecessor) "exercises . . . its options to extend the term of the [original lease]." (Id. at 1-2). Hasho and Landlord also agreed that "[i]n the event of a failure by [Landlord] to pay [Hasho] commissions due and payable in connection with such lease . . . it is agreed that the Tenant shall pay the installment of the brokerage commission then due and owing to [Hasho] and offset the amount of such payment against the rent and additional rent due and payable to [Landlord] under the said lease." (Id. at 2). NatWest was not, however, a signatory to the Commission Agreement. Landlord "agree[d] to incorporate in the lease the above provision authorizing payment by the tenant to [Hasho]," but never did so. (Id.). Hasho recovered its commission for the execution of the First Lease from Landlord. (Hasho Decl. ¶ 21).

Following the expiration of the First Lease, BOA and Landlord entered into another lease ("Second Lease"). Hasho has not seen the Second Lease and does not know its terms. (Compl. ¶ 16). It postulates, however, that the "principal terms of the [Second Lease] are substantially similar to the option terms contained in the [First Lease], including the occupied footprint of the Premises, the period of rental, and the amounts to be paid as rent." (Id. ¶ 17).

On or about October 14, 2009, Hasho made a demand on Landlord for the commission due for BOA's alleged exercise of its option to renew the Original Lease. (Id. ¶ 21). Initially, one of Landlord's principals acknowledged that Hasho was entitled to a commission and provided the specific amount that would be due—$237,654.90. (Id. ¶ 22). On or about January 18, 2010, however, Landlord repudiated its obligation on the grounds that the claimed renewal was actually a new lease. (Id. ¶ 23).

## II. Procedural History

Hasho filed a complaint on July 8, 2010, alleging that "[b]oth an implied and an express contract existed between NatWest and plaintiff, pursuant to which NatWest agreed to pay plaintiff its standard commission." (Compl. ¶ 11). On September 23, 2010, BOA moved to dismiss for failure to state a claim upon which relief can be granted or for summary judgment.

## III. Legal Standards

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court assumes all facts alleged in the complaint to be true, and draws all reasonable inferences in favor of the plaintiff. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). Incantation of the elements of a cause of action, however, "supported by mere conclusory statements, do not suffice . . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949-50 (2009). To avoid dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," that is to say, facts that "nudge [] [the plaintiff's] claims across the line from conceivable to plausible . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility, in turn, requires only that the allegations in the complaint "raise a reasonable expectation that discovery will reveal evidence" in support of the claim. Id. at 555; see also Arar v. Ashcroft, 585 F.3d 559, 617 (2d Cir. 2009).

Summary judgment is proper if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating

4

that it is entitled to relief. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).

## IV. Discussion

BOA argues that it is not a party to the December 6, 1994 Commission Agreement, and therefore is not bound by it; that the lease provides for payment by Landlord; and that Hasho has no factual basis to postulate that the 2009 lease is a renewal of the original lease. (Mem. in Supp. 1).

Hasho responds that it was employed to "act as [NatWest's] agent" in finding prime rental space for its flagship branch. (Mem. in Opp. 2). Hasho concedes that the 1994 Lease makes the Landlord responsible for paying the broker's commission, but argues that the claim against NatWest arises separately from its employment as NatWest's agent. (Hasho Decl. ¶ 21; Mem. in Opp. 5).

In order for a broker to be entitled to a commission for services rendered, the broker must plead and prove an express or implied contract of employment. Joseph P. Day Realty Corp. v. Chera, 762 N.Y.S.2d 373, 376 (N.Y. App. Div. 1st Dep't 2003). Although the complaint refers to an express contract with NatWest, (Compl. ¶ 11), Hasho does not provide, cite, or name it. Presumably, it refers to the Commission Agreement provision that shifts responsibility for the commission payment to NatWest, if Landlord fails to pay. NatWest was not a party to the Commission Agreement, however, and could not have incurred any legal obligations under this instrument. Rather, the legal force of this provision of the Commission Agreement is simply that the Landlord agrees to permit the Tenant to offset any payment it makes towards the brokerage commission against the rent due. While the Landlord promised to include this responsibility-

shifting provision in the lease, it was not included, nor was it set forth, in any document executed by NatWest. Indeed, the Rider to the First Lease specifically provides that NatWest has no obligation to make such a payment. NatWest is not a party to these documents; and they cannot be the basis for any liability.

Similarly, in the Rider to the Lease, NatWest agrees that it "may (but shall not be obligated to) pay the brokerage commission" if the Landlord failed to do so. (Rider to First Lease, § 28). The rider recognizes the owner's obligation to pay the brokerage commission, and provides a method for NatWest to pay by deducting the Commission from the rent, otherwise due the Landlord, but only if the Bank/lessee voluntarily elects to do so. This cannot serve as a basis for liability.

Julien J. Studley, Inc. v. New York News, Inc. held that the Court will not imply an agency relationship between a broker and a party to a deal, where one has been expressly agreed to in a contract between the broker and the other party to the deal. 70 N.Y.S.2d 628, 629 (1987) ("A contract cannot be implied in fact where there is an express contract covering the subject matter involved."). Even if the complaint was deemed sufficient to state Hasho's legal claim against BOA, which in turn may be entitled to seek relief against Landlord under Section 28 of the Rider to the First Lease, there would still be the question of whether there was an implied contract between BOA and Hasho for the payment of a broker's fee. See Joseph P. Day Realty, 762 N.Y.S.2d at 152; Gronich & Co., Inc. v. 649 Broadway Equities Co., 169 A.D.2d 600, 602 (N.Y. App. Div. 1st Dep't 1991) ("[T]he contract of employment may be established . . . by facts showing, in the absence of [an] express agreement, a conscious appropriation of the labors of the broker . . . in some cases 'by the mere acceptance of the labors of a broker.'" (quoting Sibbald v Bethlehem Iron Co., 83 N.Y. 378, 380-381 (1881)).

It is difficult to find such an implied relationship where the Commission Agreement provides that Landlord actually employed the broker.[3] Studley, 70 N.Y.2d 628, 629 (1987). Hasho claims that "numerous letters . . . show convincingly that [it]—and [it] alone—was NatWest's exclusive broker on this deal." (Mem. in Opp. 2). In support, it offers a letter from a manager at NatWest's successor in interest, thanking Hasho for its "perseverance, continued help and guidance" in bringing "the 150 Broadway deal to a very successful conclusion." (Hasho Decl. Ex. D). Although the manager refers to the "task we gave you" and thanks Hasho for "being on our team," (id.), these vague sentiments do not evince the assent necessary to give rise to an implied contract. See Sivin-Tobin Assocs., LLC v. Akin Gump Strauss Hauer & Feld LLP, 892 N.Y.S.2d 71, 73 (N.Y. App. Div. 2009).

Additionally, Hasho offers a letter it sent to Landlord, on which NatWest is copied, stating that "If Landlord . . . is in default of the brokerage commission payable to [Hasho], [NatWest] is willing to pay the agreed upon brokerage commission which shall be deducted from [NatWest's] base rental." (Hasho Decl. Ex. D, at 22). Hasho also submits a letter it received from Landlord, who had an interest in portraying NatWest as Hasho's sole client. (Hasho Decl. Ex. C (referring to Landlord's "meeting with you client Mr. Bill Newbeck of [NatWest]")). The two Hasho-landlord letters do not support the conclusion that NatWest manifested its assent to accept and be responsible for compensating Hasho's services. They do not, therefore, create a genuine dispute as to whether an implied contract existed.

Other than that, Hasho provides only its word and conclusory speculation.[4] It states that NatWest "knew" and "was fully aware" that it was obligated to pay the commission, but fails to

---

[3] Nor has Hasho indicated that further discovery is likely to yield such evidence.
[4] Hasho argues that the lease provides that "Brokerage commission to be paid by the landlord or, if the landlord fails to pay the Commission, the bank would pay . . . ." (Hasho Decl. ¶ 17). While this may be an accurate statement of Hasho's wishes, it is not a correct statement of the facts. The lease provides that NatWest may pay the commission,

7

cite any document or legal principle in support. Mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient to defeat summary judgment. See, e.g., Kramer v. City of N. Y., No. 04 Civ. 106 (HB), 2004 WL 2429811, at 8 (S.D.N.Y. Nov. 1, 2004). No reasonable juror could find for Hasho on this record.

Finally, Hasho asserts (quoting section 10 of the Lease Rider) that "the undertaking by the landlord to pay on the bank's behalf was a condition for NatWest's execution of the lease." This assertion is fatal to Hasho's claim. It flatly contradicts Hasho's argument that it was preserving its right to proceed against NatWest in the event Landlord failed to pay. Even if NatWest requested Hasho's services, its conscious appropriation of its services was expressly conditioned on Landlord paying the brokerage fee. As a result, it is not legally possible for Hasho to have implicitly earned a brokerage commission for which NatWest was responsible. As Hasho admits, NatWest would not have agreed to such a deal, preventing the necessary triggering condition for the commission—successfully bringing "together the minds of the buyer and seller." Greene v. Hellman, 412 N.E.2d 1301, 1307 (N.Y. 1980) (internal quotations omitted). As a matter of law, therefore, NatWest's use of Hasho's services cannot give rise to an implied obligation to pay the commission.[5]

The Court notes, however, that Hasho is not without a remedy. The Commission Agreement provides for the landlord to pay an additional commission, if the tenant extends the existing lease; and for arbitration of any claims arising under the Agreement. (Fowler Decl. Ex. B, at 3).

---

but expressly states that it is not obligated to do so. (Rider to First Lease, § 28 (emphasis added)). What is said here is also applicable to Hasho's other arguments about what NatWest "knew" about its obligations.

[5] If, as Hasho claims, it knew Landlord would renege on its promise to pay the commission, it is unclear why it did not ensure that NatWest sign the Commission Agreement or some other document memorializing its alleged commitment to pay if Landlord failed to do so.

## Conclusion

For the foregoing reasons, BOA's motion to dismiss on summary judgment is GRANTED. The Clerk is directed to terminate the case.

Dated: New York, New York
       August 3, 2011  *PAC*

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge
